**IN THE DISTRICT COURT OF PITTSBURG COUNTY**
**STATE OF OKLAHOMA**

| | |
|---|---|
| **CALEB ELY MURRAY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**STEPHEN SPARKS; FRANKIE McCLENDON, Sheriff of Pittsburg County, in his official capacity; THE BOARD OF COUNTY COMMISIONERS OF PITTSBURG COUNTY, OKLAHOMA,**<br><br>**Defendants.** | **Case No. CJ-2026-18** |

IN DISTRICT COURT
PITTSBURG COUNTY, OKLA
2026 MAY -5 AM 11:12
DEPUTY

# AMENDED PETITION

**COMES NOW** the Plaintiff, Caleb Ely Murray, by and through his attorneys of record, Eric Grantham of Stipe Law Firm and Brecken Wagner of Wagner & Lynch, and for his causes of action against Defendants alleges and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Caleb Ely Murray ("Murray") is an individual residing at 112 Palomino Road, McAlester, Pittsburg County, Oklahoma 74501.

2. Defendant Stephen Sparks ("Sparks") is a police officer employed by the Choctaw Nation Tribal Police.

3. Defendant Frankie McClendon is the duly elected Sheriff of Pittsburg County, Oklahoma ("Sheriff McClendon"), sued in his official capacity. He may be served at the Board of County Commissioners of Pittsburg County, Oklahoma, 115 East Carl Albert Parkway, McAlester, Oklahoma 74501.

4. Defendant the Board of County Commissioners of Pittsburg County, Oklahoma, is the governing entity of Pittsburg County, Oklahoma.

5. This Court has jurisdiction over this action and venue is proper in Pittsburg County pursuant to 12 O.S. § 133, as the events giving rise to this action occurred in Pittsburg County, Oklahoma.

6. Plaintiff has satisfied the requirements of the Governmental Tort Claims Act, 51 O.S. § 151 et seq., by timely filing a Notice of Tort Claim with the Board of County Commissioners of Pittsburg County on January 30, 2026. The statutory period for denial or approval of the claim has expired. This action is timely filed.

**CROSS-DEPUTIZATION AGREEMENT AND LEGAL AUTHORITY**

7. Defendant Sparks holds a cross-deputization commission issued by the Board of County Commissioners of Pittsburg County, Oklahoma pursuant to the Cross-Deputization Agreement Among Pittsburg County, Oklahoma, The Bureau of Indian Affairs, and the Choctaw Nation of Oklahoma, executed in 1994 and continuously in effect thereafter (the "Cross-Deputization Agreement").

8. The Cross-Deputization Agreement was entered pursuant to the authority of the Indian Law Enforcement Reform Act, 25 U.S.C. § 2801 et seq., the Oklahoma State Tribal Relations Act, 74 O.S. §§ 1221 et seq., and the Oklahoma Interlocal Cooperation Act, 74 O.S. §§ 1001 et seq.

9. The express purpose of the Cross-Deputization Agreement is "to provide for the cross-deputization of law enforcement officers employed by the various agencies which are parties to this Agreement so that each agency's officers will be authorized to provide law enforcement

services and make lawful arrests in Indian country within the geographic area of Pittsburg County, Oklahoma."

10. Paragraph 8.B of the Cross-Deputization Agreement specifically provides that "[o]fficers carrying commissions issued by a state agency, a sheriff's department, or a city police department are given the authority to enforce Oklahoma state criminal laws and city ordinances, where applicable."

11. Paragraph 9.C of the Cross-Deputization Agreement explicitly recognizes that "state laws have been held generally to be inapplicable to Indians in Indian Country; and the parties agree that nothing in this Agreement makes any law applicable to a certain person or certain conduct where it would not otherwise be applicable."

12. Murray is not Native American and is therefore not subject to tribal jurisdiction. Because Murray is not Native American, tribal law and tribal jurisdiction were inapplicable to Murray at all times relevant to this action.

13. Because Murray is not Native American, the only legal authority under which Defendant Sparks could lawfully act with regard to Murray was as a cross-deputized agent and employee of the Board of County Commissioners of Pittsburg County, Oklahoma enforcing Oklahoma state criminal laws.

## FACTUAL ALLEGATIONS

14. On January 31, 2025, at approximately 9:00 p.m., Pittsburg County Sheriff's Deputies responded to a call at 112 Palomino Road, McAlester, Pittsburg County, Oklahoma.

15. During this response, Murray was arrested and placed in handcuffs by Pittsburg County Sheriff's Deputies. Murray was restrained with handcuffs in front of his body and was seated in the back seat of a Pittsburg County Sheriff's Deputy patrol vehicle.

16. Murray did not resist arrest, did not attempt to flee, and posed no immediate threat to the safety of any officer or other person at the scene.

17. Defendant Sparks, a Choctaw Nation Tribal Police Officer, arrived at 112 Palomino Road. Defendant Sparks was not dispatched to the location by any tribal law enforcement agency or tribal authority.

18. At all times relevant to this action, Defendant Sparks arrived at and operated at the scene pursuant to his cross-deputization commission, acting as an agent and employee of Defendant McClendon, the Pittsburg County Sheriff's Office and the Board of County Commissioners of Pittsburg County, Oklahoma.

19. At all times relevant to this action, Defendant Sparks was acting under color of state law as an agent and employee of Defendant McClendon, the Pittsburg County Sheriff's Office and the Board of County Commissioners of Pittsburg County, Oklahoma pursuant to the Cross-Deputization Agreement.

20. Pittsburg County Sheriff's Deputies Richard Phillips, James Pitts, and Guillermo Melchor were present at the scene during the events described herein.

21. While Murray was handcuffed and seated in the back of the patrol vehicle in a restrained and vulnerable position, Defendant Sparks approached the vehicle.

22. Defendant Sparks removed Murray from the back of the Pittsburg County Sheriff's patrol unit.

23. While Murray was handcuffed and in a restrained position and posed no threat to Defendant Sparks or any other person, Defendant Sparks struck Murray in the head with a closed fist.

24. Defendant Sparks struck Murray multiple times during the incident, including at least one strike to Murray's head while Murray was handcuffed, restrained, and vulnerable.

25. At no time during the incident did Murray strike Defendant Sparks or pose any threat to Defendant Sparks or any other officer present. Murray did not resist, attempt to flee, or threaten the safety of any person.

26. The force used by Defendant Sparks was objectively unreasonable under the circumstances and constituted excessive force in violation of Murray's clearly established constitutional rights.

27. Deputies Phillips, Pitts, and Melchor were present and witnessed the assault by Defendant Sparks on a handcuffed and restrained Murray. None of the deputies intervened to stop or prevent the assault.

28. The failure of Deputies Phillips, Pitts, and Melchor to intervene was the result of inadequate training, policies, customs, and practices of the Board of County Commissioners of Pittsburg County, Oklahoma regarding use of force, supervision of cross-deputized officers, and the duty to intervene.

29. As a direct and proximate result of the assault by Defendant Sparks, Murray suffered serious physical injuries including head trauma, facial injuries, pain, swelling, and bruising. Murray has also suffered severe emotional distress, anxiety, depression, fear of law enforcement, humiliation, sleep disturbances, and nightmares.

**Spoliation and Concealment of Evidence**

30. Body camera footage exists that documents the assault by Defendant Sparks on Murray on January 31, 2025.

31. Because Defendant Sparks was acting as an agent and employee of the Pittsburg County Sheriff's Office at the time the footage was created, the body camera footage belongs to the Sheriff's Office as evidence of the incident.

32. Murray filed a protective order action against Defendant Sparks in Pittsburg County District Court, Case No. PO-2025-125. On or about May 15, 2025, Murray served discovery requests upon Defendant Sparks seeking production of the body camera footage.

33. In his written discovery responses served on June 30, 2025, Defendant Sparks objected on meritless grounds and falsely stated "None" in response to a request for production of body camera footage in his possession, custody, or control. Defendant Sparks simultaneously admitted in response to another interrogatory that body camera footage exists, that he has reviewed it, and identified it as "Body Worn Camera video owned by the Choctaw Nation of Oklahoma."

34. Defendant Sparks's response confirms: (a) body camera footage of the incident exists; (b) Defendant Sparks has reviewed the footage; and (c) Defendant Sparks has the practical ability to obtain the footage.

35. On June 19, 2025, the Pittsburg County Sheriff's Office was served with a subpoena in the criminal case against Murray, Case No. CM-2025-46, requiring production of body camera footage and related materials. The Pittsburg County Sheriff's Office failed to produce any body camera footage in response to the subpoena.

36. The coordinated refusal by Defendant Sparks, the Choctaw Nation, and the Pittsburg County Sheriff's Office to produce the body camera footage is contradicted by the routine practice of Choctaw Lighthorse Police officers, including Defendant Sparks, producing body

camera footage and similar evidence in criminal prosecutions in Oklahoma state courts pursuant to the cross-deputization agreement.

37. The coordinated refusal to produce the footage constitutes spoliation of evidence, demonstrates consciousness of guilt, and constitutes an attempt to hide evidence that contradicts Defendant Sparks's false claim that he acted in self-defense.

38. Upon information and belief, the body camera footage contradicts Defendant Sparks's claim of self-defense and instead shows Defendant Sparks striking a handcuffed and restrained Murray who posed no threat.

39. The spoliation and concealment of the body camera footage has materially prejudiced Murray's ability to prove his claims and has denied Murray access to the most objective and reliable evidence of the incident.

**Inadequate Training, Policies, Customs, and Practices**

40. The Pittsburg County Sheriff's Office, under the supervision of Defendant McClendon, maintained inadequate training, policies, customs, and practices including:

a. Failure to adequately train deputies and cross-deputized officers on constitutional limitations on use of force against restrained and handcuffed individuals;

b. Failure to adequately train deputies and cross-deputized officers on de-escalation techniques;

c. Failure to adequately train deputies on their duty to intervene when witnessing excessive force;

d. Failure to establish adequate policies regarding ownership, custody, control, preservation, and production of body camera footage created by cross-deputized officers;

e. Permitting cross-deputized officers from other agencies to use force against individuals in Pittsburg County custody without adequate supervision or accountability;

f. Failing to establish adequate policies regarding interaction between county deputies and cross-deputized officers; and

g. Failure to investigate, discipline, or prevent excessive force incidents involving cross-deputized officers.

## FIRST CAUSE OF ACTION
**42 U.S.C. § 1983 – Excessive Force (Fourth Amendment)**
**(Against Defendant Sparks)**

41. Plaintiff incorporates by reference all preceding paragraphs.

42. At all times relevant to this action, Defendant Sparks was acting under color of state law as an agent and employee of Defendant McClendon and the Pittsburg County Sheriff's Office pursuant to the Cross-Deputization Agreement.

43. Because Murray is not Native American and tribal law was inapplicable to him, the only authority under which Defendant Sparks could lawfully act with regard to Murray was as a cross-deputized agent and employee of the Pittsburg County Sheriff's Office.

44. The Fourth Amendment to the United States Constitution protects individuals from unreasonable seizures, including the use of excessive force during an arrest or detention.

45. At the time of the incident, Murray had been seized within the meaning of the Fourth Amendment. Murray was handcuffed, restrained, and seated in a patrol vehicle.

46. Defendant Sparks's use of force against Murray, including striking Murray in the head with a closed fist multiple times while Murray was handcuffed and restrained, was objectively unreasonable under the circumstances.

47. Murray posed no immediate threat to the safety of Defendant Sparks or others, was not actively resisting arrest, and was not attempting to flee.

48. The force used by Defendant Sparks violated Murray's clearly established constitutional right to be free from excessive force. It has been clearly established for decades that officers may not use significant force against a person who is handcuffed, restrained, and poses no threat.

49. Defendant Sparks is not entitled to qualified immunity because his conduct violated clearly established constitutional rights of which a reasonable officer would have known.

50. As a direct and proximate result of Defendant Sparks's use of excessive force, Murray suffered physical and emotional injuries as alleged herein.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 – Monell Liability / Failure to Train and Supervise (Against Defendant McClendon in his Official Capacity and the Board of County Commissioners of Pittsburg County, Oklahoma)**

51. Plaintiff incorporates by reference all preceding paragraphs.

52. Defendant McClendon, as Sheriff of Pittsburg County, is the final policymaker for the Pittsburg County Sheriff's Office with respect to law enforcement policies, training, supervision, and discipline.

53. The Pittsburg County Sheriff's Office, under the direction and control of Defendant McClendon, maintained a policy, custom, or practice of inadequate training and supervision of its deputies and cross-deputized officers regarding the constitutional limits on the use of force, the duty to intervene to prevent excessive force, and the supervision of cross-deputized officers.

54. The constitutional violations suffered by Murray were the direct result of the Pittsburg County Sheriff's Office's failure to adequately train and supervise its deputies and

cross-deputized officers regarding: (a) constitutional limitations on the use of force against restrained individuals; (b) de-escalation techniques; (c) the duty to intervene when excessive force is being used; (d) proper documentation and reporting of use-of-force incidents; and (e) preservation and production of body camera evidence.

55. The failure to train and supervise amounts to deliberate indifference to the constitutional rights of persons who come into contact with the Pittsburg County Sheriff's Office, including Murray.

56. The inadequate training and supervision were the moving force behind the constitutional violations suffered by Murray.

57. As a direct and proximate result of Defendants' unconstitutional policies, customs, and practices, Murray suffered the injuries and damages alleged herein.

## THIRD CAUSE OF ACTION
**42 U.S.C. § 1983 – Failure to Intervene**
**(Against Defendant McClendon in his Official Capacity and the Board of County Commissioners of Pittsburg County, Oklahoma)**

58. Plaintiff incorporates by reference all preceding paragraphs.

59. Deputies Richard Phillips, James Pitts, and Guillermo Melchor were present during the assault by Defendant Sparks on Murray and had a reasonable opportunity to intervene to prevent the constitutional violation.

60. Each of the deputies present failed to intervene to prevent or stop the assault by Defendant Sparks on Murray despite being present, witnessing the assault, and having the ability and duty to intervene.

61. The failure of the deputies to intervene was the result of the inadequate training, policies, customs, and practices of the Pittsburg County Sheriff's Office regarding the duty to intervene, for which Defendant McClendon is responsible as final policymaker.

62. As a direct and proximate result of the failure to intervene, Murray suffered injuries and damages as alleged herein.

## FOURTH CAUSE OF ACTION
**42 U.S.C. § 1983 – Spoliation of Evidence / Denial of Access to Courts (Fourteenth Amendment) (Against All Defendants)**

63. Plaintiff incorporates by reference all preceding paragraphs.

64. The Due Process Clause of the Fourteenth Amendment and the right of access to courts protect individuals' rights to seek redress for constitutional violations.

65. The intentional destruction, concealment, or withholding of material evidence by state actors acting in bad faith violates due process and denies meaningful access to courts.

66. Defendant Sparks, acting as an agent and employee of the Pittsburg County Sheriff's Office, created body camera footage of his assault on Murray. That footage, created by an agent of the Sheriff's Office while acting in that capacity, belongs to the Pittsburg County Sheriff's Office.

67. Defendants, through a coordinated refusal to produce the body camera footage, have engaged in intentional spoliation of evidence. Defendants have falsely claimed the footage "belongs" to the Choctaw Nation, a claim contradicted by the terms of the Cross-Deputization Agreement and by the routine practice of producing such footage in criminal prosecutions.

68. The body camera footage is highly material to Murray's claims, as it would provide objective documentation of the assault and would contradict Defendant Sparks's false claim that he acted in self-defense.

69. Defendants coordinated refusal to produce the footage demonstrates bad faith and consciousness of guilt, as there is no legitimate reason to withhold footage that is routinely produced in criminal cases.

70. As a direct result of Defendants' spoliation and concealment of evidence, Murray has been denied access to critical evidence and has been denied meaningful access to courts.

## FIFTH CAUSE OF ACTION
**Assault and Battery**
**(Against Defendant Sparks and Defendant McClendon in his Official Capacity / Board of County Commissioners of Pittsburg County, Oklahoma)**

71. Plaintiff incorporates by reference all preceding paragraphs.

72. The actions of Defendant Sparks in approaching Murray while Murray was handcuffed and restrained in a patrol vehicle, removing Murray from the vehicle, and striking Murray in the head multiple times with a closed fist constitute assault and battery under Oklahoma law.

73. At all times relevant to this action, Defendant Sparks was acting as an agent and employee of Defendant McClendon and the Pittsburg County Sheriff's Office pursuant to the Cross-Deputization Agreement.

74. The actions of Defendant Sparks were not protected by any privilege or immunity, as his conduct was in bad faith, constituted an abuse of lawful power, and was objectively unreasonable under the circumstances.

75. The Board of County Commissioners of Pittsburg County, Oklahoma is vicariously liable for the assault and battery committed by Defendant Sparks pursuant to the doctrine of respondeat superior, as Defendant Sparks was acting as an agent and employee of the Pittsburg County Sheriff's Office at the time of the assault.

76. Plaintiff has complied with the notice requirements of the Governmental Tort Claims Act, 51 O.S. § 151 et seq., and brings this claim within the applicable statutes of limitation.

77. As a direct and proximate result of the assault and battery, Murray suffered physical injuries, pain and suffering, medical expenses, emotional distress, and other damages as alleged herein.

**SIXTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Sparks and Defendant McClendon in his Official Capacity / Board of County Commissioners of Pittsburg County, Oklahoma)**

78. Plaintiff incorporates by reference all preceding paragraphs.

79. The conduct of Defendant Sparks, acting as an agent and employee of the Pittsburg County Sheriff's Office, in assaulting a handcuffed and defenseless individual who posed no threat, was extreme and outrageous conduct that exceeds all bounds of decency.

80. Defendant Sparks's conduct was intentional or reckless, as Defendant Sparks intentionally struck Murray multiple times while Murray was handcuffed, restrained, and posed no threat.

81. As a direct and proximate result of Defendant Sparks's extreme and outrageous conduct, Murray suffered severe emotional distress including anxiety, depression, fear of law enforcement, humiliation, embarrassment, sleep disturbances, and nightmares.

82. The Board of County Commissioners of Pittsburg County, Oklahoma is vicariously liable for Defendant Sparks's intentional infliction of emotional distress pursuant to the doctrine of respondeat superior, as Defendant Sparks was acting as an agent and employee of the Pittsburg County Sheriff's Office at the time of the incident.

**SEVENTH CAUSE OF ACTION**
**Negligence**
**(Against Defendant McClendon in his Official Capacity and the Board of County Commissioners of Pittsburg County, Oklahoma)**

83. Plaintiff incorporates by reference all preceding paragraphs.

84. Defendant McClendon and the Board of County Commissioners of Pittsburg County, Oklahoma owed Murray a duty of care to protect him from harm while in the custody of the Pittsburg County Sheriff's Office and to properly supervise the officers present at the scene, including cross-deputized officers.

85. Defendant McClendon and the Board of County Commissioners of Pittsburg County, Oklahoma breached that duty by:

a. Failing to protect Murray from harm while in custody;

b. Failing to intervene to prevent the assault by Defendant Sparks;

c. Failing to properly supervise cross-deputized officers at the scene; and

d. Failing to preserve and produce body camera footage documenting the assault.

86. As a direct and proximate result of Defendants' negligence, Murray suffered physical injuries, emotional distress, and other damages as alleged herein.

87. Plaintiff has complied with the notice requirements of the Governmental Tort Claims Act, 51 O.S. § 151 et seq., having filed his Notice of Tort Claim with the Board of County Commissioners of Pittsburg County on January 30, 2026.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Caleb Ely Murray respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against Defendants on all claims;
2. Issue an order requiring Defendants to produce all body camera footage and related materials forthwith, or impose appropriate spoliation sanctions including adverse inferences, evidentiary presumptions, and dismissal of defenses;
3. Award compensatory damages in an amount to be determined by a jury;
4. Award punitive damages against Defendant Sparks in an amount to be determined by a jury;
5. Award pre-judgment and post-judgment interest as allowed by law;
6. Award costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law;
7. Grant a trial by jury on all issues so triable; and
8. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Eric Grantham, OBA # 22156
*Stipe Law Firm*
343 East Carl Albert Pkwy
McAlester, OK 74501
918.423.0421
918.423.0266 (facsimile)
eric@stipelaw.com

and

Brecken A. Wagner, OBA# 20122
*Wagner & Lynch*
109 E Washington
McAlester, Oklahoma 74501
Telephone: (918) 421-8843
Facsimile: (918) 421-8853
brecken@wagnerandlynch.com
cc: legalassistant@wagnerandlynch.com

*Attorneys for Plaintiff*

**ATTORNEY'S LIEN CLAIMED**